IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **CASSIE B. WOODLEY,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **2:12-cv-0657-AKK** |
| **UNIVERSITY OF ALABAMA** | ) | |
| **AT BIRMINGHAM, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND MEMORANDUM OPINION

Before the court is Defendant the Board of Trustees of the University of Alabama's (the "Board") motion to dismiss Plaintiff Cassie B.Woodley's ("Woodley") Amended Complaint. Doc. 9. For the reasons stated more fully herein, the motion is **GRANTED**, and the court **DISMISSES with prejudice** Woodley's Americans with Disability Act of 1990, as amended ("ADAAA"), claims against the Board, *see* doc. 3, at 6-8, and **DISMISSES without prejudice** Woodley's state law claim against the Board, *see id.*, at 8.

## Analysis

**I.     ADAAA Claims**

In her Amended Complaint, Woodley maintains that the Board refused to accommodate her request for assistance with administrative and/or clerical tasks in violation of the ADAAA (Count I), and the Board also retaliated against her for

requesting this assistance (Count II).  *Id.* at 6-8.  *See also* 42 U.S.C. § 12112(b)(5)(A) (defining "discrimination under the ADAAA as, *inter alia*, "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee . . . .").  Woodley seeks both injunctive relief and monetary damages for these purported ADAAA violations.  *See* doc. 3, at 8-9.  The Board moves to dismiss both ADAAA counts pursuant to the Eleventh Amendment's grant of sovereign immunity, doc. 9, and the court agrees with the Board under *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 360 (2001).

In *Garrett* the Court addressed "whether employees of the State of Alabama may recover money damages by reason of the State's failure to comply with the provisions of Title I of the Americans with Disabilities Act of 1990."  *Id.* (citing 42 U.S.C. §§ 12111 – 12117).[1]  The Court held that "such suits are barred by the Eleventh Amendment" because Congress acted outside of "its constitutional authority by subjecting the States to suits in federal court for money damages under the ADA."  *Id.* at 364.  Briefly, the Eleventh Amendment guarantees "that nonconsenting States may not be sued by private individuals in federal court."  *Id.* at 363 (citing *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000)).  However, "Congress may abrogate the States' Eleventh Amendment immunity when it both

---

[1] While Congress amended the ADA effective January 1, 2009, the court finds no indication that these amendments abrogated *Garrett*.  *See* Pub. L. No. 110–325, 122 Stat. 3553; *Morales v. Ga. Dep't of Human Res.*, 446 F. App'x 179, 182 n.1 (11th Cir. 2011).

unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Id.* (quoting *Kimel*, 528 U.S. at 73) (alteration in original).  Furthermore, this "valid grant of constitutional authority" arises from "the enforcement provisions of § 5 of the Fourteenth Amendment." *Id.* at 364 (citing *Fitzpatrick v. Blitzer*, 427 U.S. 445, 456 (1976)).  And, beyond enforcing § 1 of the Fourteenth Amendment's "actual guarantees," Congress may also seek "'to remedy and to deter violation of rights guaranteed thereunder by prohibiting a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's test.'" *Id.* at 365 (quoting *Kimel*, 528 U.S. at 81).[2]  In doing so, "§ 5 legislation reaching beyond the scope of § 1's actual guarantees must exhibit 'congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end.'" *Id.* (quoting *City of Boerne v. Flores*, 521 US. 507, 520 (1997)).  The Court determined that the ADA failed the "congruence and proportionality" test to abrogate sovereign immunity because "States are not required by the Fourteenth Amendment to make special

---

[2] In relevant part, the Fourteenth Amendment provides:

> [§ 1] No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

> [§ 5] The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

U.S. Const. amend. XIV.

accommodations for the disabled, so long as their actions toward such individuals are rational" and the "legislative record of the ADA . . . simply fails to show that Congress did in fact identify a pattern of irrational state discrimination in employment against the disabled." *Id.* at 367-68.  Thus, in accordance with *Garrett*, the Board is immune from money damages under the ADAAA, and, as such, the court **DISMISSES** Woodley's ADAAA claims for money damages against the Board.

In response to the Board's motion, Woodley appears to concede *Garrett*'s application as it relates to money damages claims but contends that she may still seek injunctive relief against the Board under *Ex parte Young*.  Doc. 13, at 2. Indeed, in *Garrett*, the Court specifically stated that "Title I of the ADA still prescribes standards applicable to the States.  Those standards can be enforced by the United States in actions for money damages, as well as by private individuals in actions for injunctive relief under *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908)." 531 U.S. at 374 n.9.  Unfortunately for Woodley, however, the Eleventh Circuit explicitly instructs that "[t]he University of Alabama Board of Trustees is a state agency, not a state official acting in its official capacity . . . . [h]ence, the exception to 11th Amendment immunity set out in *Ex parte Young* does not apply to claims against it . . . ." *Eubank v. Leslie*, 210 F. App'x 837, 844-45 (11th Cir. 2006) (citing *Harden v. Adams*, 760 F.2d 1158, 1163 (11th Cir. 1985)).  Put differently, "a suit alleging a violation of the federal constitution [or statute] against a state official in his official capacity for injunctive relief on a

prospective basis is not a suit against the state, and, according, does not violate the Eleventh Amendment." *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011); *McClendon v. Ga. Dep't of Cmty. Heath*, 261 F.3d 1252, 1256 (11th Cir. 2001). Critically, however, as the Board is not a state *official*, but is actually an arm of the state, the *Young* doctrine is unavailable to Woodley. *See Harden*, 760 F.2d at 1164 ("The Alabama Supreme Court has also determined that the Board of Trustees of a state university is entitled to sovereign immunity as an instrumentality of the state.") (citing *Hutchinson v. Bd. of Trs. of Univ. of Ala.*, 256 So. 2d 279 (Ala. Ct. App. 1971)). Therefore, the court **DISMISSES** Woodley's ADAAA claims for injunctive relief asserted against the Board.

## II. Intentional Infliction of Emotional Distress

Woodley also claims that the Board's conduct caused her "severe mental and emotional distress" (Count III). Doc. 3, at 8. While not stated specifically in the Amended Complaint, the court assumes that Woodley alleges a state law claim for intentional infliction of emotional distress or outrage. *See Moore v. Spiller Associated Furniture, Inc.*, 598 So. 2d 835, 837 (Ala. 1992). The Board moves to dismiss this claim pursuant to Fed. R. Civ. P. 12(b)(6). Doc. 9, at 2.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient.  *Id*. (citations and internal quotation marks omitted).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id*.  Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).  A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  On a motion to dismiss under Rule 12(b)(6), the court accepts all factual allegations as true.  *See, e.g.*, *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).  However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth.  *Iqbal*, 556 U.S. at 678.  Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

      Moreover, under Alabama law, "the tort of outrage is a very limited cause of action that is available only in the most egregious circumstances."  *Thomas v. BSE*

*Indus. Contractors, Inc.*, 624 So. 2d 1041, 1044 (Ala. 1993). And indeed, conduct rising to the level of outrage must be "so extreme and outrageous in degree 'as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.'" *Moore*, 598 So. 2d at 837 (quoting *Am. Road Serv. Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1981)). Therefore, to state a claim for outrage, the plaintiff must establish that "defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Thomas*, 624 So. 2d at 1043.

Here, Woodley, a former Program Coordinator and Program Manager at the University of Alabama at Birmingham's ("UAB") Pediatric Pulmonary Division, alleges that in 2004 she underwent surgery after being diagnosed with "hyperparathyroidism with parathryoid adenoma and a dominate thyroid nodule (thyroid cancer)." Doc. 3, at 3. Following surgery, Woodly required hospitalization due to recurrent thyroid problems and even had to be taken by ambulance to the hospital while at work in "September 2004, and again in either 2007 or 2008." *Id.* Also in September 2004, Woodley's physician found that she constituted a "suitable candidate to receive donated sick time," and Cheryl Morton ("Morton"), Woodley's office manager, informed Woodley that she, in fact, received donated sick time to take the remainder of September off. *Id.* at 4. Moreover, on several occasions, Woodley discussed her medical condition with Morton and her supervisor, Dr. John Paul Clancy, which included memory

problems, "brain fog," extremity and muscle spasms, fatigue, and depression. *Id.*

Additionally, Woodley alleges that the Pediatric Pulmonary Division experienced substantial growth during her tenure, and, as such, her workload increased. *Id.* at 5. Therefore, Woodley "expressed to her supervisors, on multiple occasions, that with the increased workload and onset health problems, [she] could use assistance." *Id.* Specifically, "in September 2005, Woodley outlined aspects of her responsibilities that student helpers could complete[,] [but] Woodley was not provided with assistance." *Id.* Subsequently, on February 3, 2011, Morton gave Woodley a verbal warning regarding the condition of her office space, and three weeks later, on February 24, 2011, Morton terminated Woodley for "inexcusable neglect of duties." *Id.*

Taking these factual allegations as true, Woodley fails to state a claim for outrage. The failure to accommodate Woodley's purported disability by neglecting to provide additional assistance in managing research grants, coordinating limited clinical trials, and completing renewals and reports for funding agencies, *see* doc. 3, at 5, is not "so extreme and outrageous in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Moore*, 598 So. 2d at 837 (citation and quotation marks omitted). Alabama courts generally limit the tort of outrage to "'only three kinds of conduct: (1) wrongful conduct in the family-burial context; (2) barbaric methods employed to coerce an insurance settlement; and (3) egregious sexual harassment.'" *Little v. Robinson*, 72 So. 3d 1168, 1172 (Ala.

2011) (quoting *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000) (internal citations omitted)).  And most recently, the Alabama Supreme Court "affirmed a judgment on a tort-of-outrage claim asserted against a family physician who, when asked by a teenage boy's mother to counsel the boy concerning his stress over his parents' divorce, instead began exchanging addictive prescription drugs for homosexual sex for a number of years, resulting in the boy's drug addiction." *Id.* at 1173 (citing *O'Rear v. B.H.*, 69 So. 3d 106 (Ala. 2011)).  The Board's purported conduct is simply well removed from these types of atrocious and deplorable actions.  Thus, while the court is sympathetic to Woodley's allegations, the tort of outrage is not a "panacea for all life's ills," *U.S.A. Oil, Inc. v. Smith*, 415 So. 2d 1098, 1101 (Ala. Civ. App. 1990), and Woodley's allegations fail to rise to the level of outrage under Alabama law.  *See Iqbal*, 556 U.S. at 678.  As such, the court **DISMISSES** this claim against the Board **without prejudice** pursuant to Fed. R. Civ. P. 12(b)(6).

## Conclusion

Based on the foregoing, the Board's motion is **GRANTED**, and, as such, the court **DISMISSES** the Board.

**DONE** the 22nd day of August, 2012.

                                         _____
                                              **ABDUL K. KALLON**
                                         UNITED STATES DISTRICT JUDGE